Good morning and may it please the Court. For more than 20 years, Fire Protective Services, a Texas family business, successfully sold Survitec life rafts, investing time and money to purchase inventory and certificates to train its employees to sell and service Survitec equipment. Survitec abruptly terminated the party's agreement without cause, dealing a substantial blow to FPS's business. So, Survitec sued under the Texas Dealer Act. The District Court dismissed FPS's claims, holding that life rafts are not equipment under the Texas Dealer Act. The District Court's conclusion conflicts with the Act's ordinary meaning and substantial Texas Supreme Court precedent. The Act's definition has three parts. Survitec has conceded two, admitting that life rafts are small e equipment under the Act and that they are legally required to be present on vessels engaged in maritime life rafts are used in connection with those commercial activities. A phrase whose ordinary meaning requires no more than a tangential connection. Life rafts . . . What's your best case that says that, that in connection with is not much more cubbied? I think the best case is actually one that counsel on the other side relies on as well, called Gulf Copper. Gulf Copper was a case in which the court held that if there are regulatory requirements that are used in connection with drilling operations that do not themselves mean that they are drilling or further drilling, that that shows that they are in connection with the activity under consideration. And here, life rafts are used in connection with covered maritime commercial activity when they are used to comply, as in Gulf Copper, with federal and international regulatory requirements. And as important, they are used in connection with that commercial activity when they protect the lives of the men and women doing that dangerous work at sea. They are safety equipment. And I want to make a very important point, I think, that the Act that we're talking about only covers deal relationships. That just because an item qualifies as equipment under the Act does not mean that every manufacturer of that item will be subject to the Act's requirements. Instead, the Act covers only equipment sold through a dealer arrangement. Texas has long sought to protect its owners by purchasing a supplier's inventory and certifying their employees to service and sell and repair that supplier's products. So when a supplier, a manufacturer, unexpectedly terminates a dealer, the dealer may thus be barred, as it was here, from selling or servicing that inventory ever again, putting it at existential risk. But the Act does not apply to the many products that are simply purchased wholesale and resold to end-users outside of these dealer arrangements. So let's turn, if I may, to the Act itself. We're talking about Texas and Business Commerce Code, Section 57.002, and its definition of equipment. And that definition has three elements. First, it has to do with the covered implements, quote, machinery, equipment or implements, or attachments thereto. And then it has a provision for the required connection, and that is used for or in connection with. And then there's a laundry list of commercial activities that follow used for or in connection with, including industrial, construction, maintenance, mining, or utility activities or applications. And our argument has been very simple and consistent throughout, that life rafts are used in connection with those commercial contexts. What Servitec is arguing is we have to read, or this Court must read, into those words that I just quoted. The Court must read a functional connection into the Act's definition of equipment. And they insist that the Act only covers equipment that has a functional or operational role in a listed commercial activity. Well, the Act's text itself rejects the limitation. The Legislature could have written such a limitation in, but it won't be found. Instead, the Legislature used very expansive and broad language. And it encompasses items used both for, but also and in connection with the commercial context. An item is used for a commercial activity if it's used to bring it about or to further or secure a result. That for, that single word for, disposes of the whole argument that Servitec makes, that there has to be a functional equivalent read into it, because for is the functional equivalent. In connection with, therefore, must mean something more expansive than items used to accomplish the listed commercial operations. As in Gulf Copper, the Court stated, and I think this is just a truism, and I'm quoting here, the phrase in connection with undoubtedly broadens the scope of the exclusion beyond work done directly on a well. Well, that's the case here. The Supreme Court of Texas has said many times over, and they're cited in our brief, that the phrase in connection is very broad, connected term, and it requires no more than a tangential relationship. But even if, even if a narrower meaning were required here, it would be satisfied. And again, I'd go to Gulf Copper for this, because there the Supreme Court held that work that is done in order to comply with regulatory requirements was in connection with a rig's underlying drilling operation. And that work was the configuration of the crew's bunk space. That configuration itself of course had nothing directly to do with drilling operations, but without complying with those international requirements for the configuration, drilling couldn't take place. And the Court said that was enough to meet the requirement. And here, the same way a life raft is used in connection with maritime commercial activity, when it is used to comply with regulatory requirements for that work, as well as when it is used to protect the lives of the persons engaged in that work. And I think an analogy might be useful here. If you think about, for example, a construction site. On a construction site, what is required? Hard hats, steel-toed boots. No one would say that a hard hat is used directly for drilling or the commercial activity. In fact, it may never even be necessary, because nothing falls on your head. And yet, it is reasonable, and I think embraced in this context, that that safety equipment is used in connection with the construction activities. And it's the same thing with life rafts. They're used in connection with all sorts of maritime activities and industrial measures. So Judge Rosenthal has found that life rafts are routine and often required, and I'm quoting from her order, in a variety of maritime industries, including offshore construction and maintenance, offshore oil drilling and undersea mining, work on utility lines that are over and under bodies of water, and offshore industrial activities. So Judge Rosenthal found that life rafts are, in fact, used in the context of these commercial contexts. What she found, however, was this is not mining. It's not mining because mining does not encompass oil and gas exploration. But for more than a century, Texas law has defined oil and gas as minerals. So mining is a generic term that is broad enough to include the process of boring into the ground for the purpose of breaching or extracting oil or gas. We pointed to a case from 1919, which was a writ refused case, which means it was adopted as law by the Supreme Court of Texas, that's Luz v. Bozeman, that says it is well settled that an oil or gas well is a mine. And just a couple of weeks ago, the Supreme Court once again referred to minerals like oil and gas in a case I lost in that court involving a salt dome. But the court referred to oil and gas as mining and minerals. So the legislature enacted the Dealer Act against this backdrop using the generic term mining without any indication that it was excluding oil and gas exploration from the term's broad meaning. I want to rebut just a couple other arguments that Cervotec makes. One is that there is some sort of terrestrial boundary that you can read into the act. In other words, the act does not, it excludes maritime activity. It's only earthbound work that it's dealing with. But the district court rightly rejected that argument because there is no basis for limiting the act's text. The ordinary meaning of several of the listed contexts encompass maritime activity. For example, construction and maintenance. Think of ports and vessels and offshore platforms. You can think of mining, deep sea mining, including but not exclusively oil and gas. Or utility work, underground sea cables and activities related to offshore wind. So Cervotec is unable to point to anything in the act's text that would exclude this conduct from the ordinary meaning of equipment. The second thing that I would like to rebut is Cervotec's reliance on the Boat Act. The Boat Act creates a parallel but not identical regime regarding dealership agreements and but it's for the sale of new boats or new boat motors. And Cervotec is arguing, well, there must be, there's a potential for conflict between the Boat Act and the Dealer Act if you rule as FPS requests that you rule. But that argument fails because there's no potential conflict between these two laws. Life rafts are not boats under the Boat Act because they do not have motors and they do not have sails. So a dealer agreement concerning life rafts is not covered by the Boat Act at all. So they switch and they say, well, the Boat Act defines vessel to include life rafts. And that's true. But the Boat Act does not regulate the sale of non-boat vessels. There's an illustration in our brief of appellants that shows a picture of these rafts. And what these rafts are really is safety equipment that floats. When there's a disaster, you pile in. There's, you know, 10, 15 people can pile in to these floating rafts and it takes you hopefully away from the danger. But these are not piloted. They're not boats. They're not sails. They're safety equipment that's used in terms, in times of emergency. And that's what this equipment is. And it's used that way. So a life raft, no motor, no sail. It's not piloted. It's not regulated in the Boat Act. It's not for transportation. Rather, it is for floating until help arrives. It is safety equipment that floats. So we're just asking for a textual reading of the Dealer Act, one that does not import other ideas and one that recognizes what the legislature has done as a matter of policy. And that is, since 2011, to protect Texas dealers in these relationships and these dealer agreements. And for that reason, we ask that the Court reverse the District Court's judgment. And I will reserve the remainder of my time for  that. All right. Thank you, sir. You have reserved your time. All right. Mr. Gaston. Thank you, Your Honor, and may it please the Court. Jeremy Gaston for Appalachia Survitec Survival Products. In this case, both the District Court, Judge Rosenthal, and the State of Texas in the certified question proceedings in the first appeal of this matter, both agreed with Survitec that marine life rafts do not count as capital E equipment under the Texas Dealer Protection Act. Judge Rosenthal's opinion covers many topics, including whether mining includes offshore oil drilling, as well as the scope of the word industrial. And the State of Texas' brief covered many topics, including the Texas Boat Act. But one thing they had in common, and it's in common with the way we've presented it and what I think is the strongest argument, is that the statutory definition, especially including the phrase in connection with, in defining equipment, has to have some kind of limiting principle. So it's a line drawing problem. And specifically, what I think is the simplest explanation is it has to have a functional or operational connection between a given item and a statutory activity or purpose. And the way I've conceptualized it is almost grammatical, is what I call a subject-verb-object statutory interpretation, because the definition has three parts. It has a subject, which is the item in question. It has an object, which is the statutory purpose, like agriculture. And it has a verb that links them together, which is the phrase used for or in connection with. And when you look at each of those parts, subject-verb-object, what you'll see are things that tell you life rafts do not come within the scope of this. So starting with the subject, the Act states that equipment means machinery, equipment, or implements, or attachments to the machinery, equipment, or implements. So you're talking about machines, things that are attached to machines, implements, or attachments. You've got the word equipment with the lowercase e. And one thing opposing counsel stated is that Servitech has conceded that our rafts are equipment with the lowercase e. And we do not. Page 32 of our brief talks about the fact that the word equipment with the lowercase e in the definition of equipment with the uppercase e has to be understood in the context of machines, implements, attachments. These are all words that are a reference to tools, things that help you accomplish some kind of objective. From the start, it would be unusual to talk about marine life rafts in that concept. Yes, boats and vessels are equipped with them, so you could call them equipment. But in the grouping of machines, implements, and attachments, we're talking about equipment as a tool, a means to a commercial end. And marine life rafts are not tools. They're safety devices, survival devices, used in case of an emergency. They're designed to sit passively in canisters until a disaster necessitates their one-time use for survival. If you said the word tools ordinarily, I would expect that to be, you know, somewhat narrow. But why is equipment necessarily as limited as the word tool? Well, and here's where you tie together the subject, the verb, and the object, because in the context of the full definition, these, the machinery, the implements, the attachments, the equipment, have to be used in connection with statutory activities, purposes and applications. Why isn't the text of the statute enough? If the legislature meant for it to be only tools, et cetera, you know, wouldn't there be limiting language within the statute itself instead of having to construe what it's not? Is it land only? Is it marine, et cetera? I mean, why isn't the language, I hear what you're saying, but I mean, the statute itself doesn't, you're making me, remind me of the eighth grade when my teacher made us diagram sentences. You know, you had to draw the line, draw the line underneath, you know, and diagram, that sounds brontosaurus, I'm sure, but still, I remember diagram. I understood it then, you know, you could figure out what a subject, what a verb was, et cetera, et cetera, et cetera, but I'm saying, not trying to be flip with you, but when you're asking me cognitively to view this in this grammatical sense, it is reminding me of having to diagram that sentence. My question embedded is that, I mean, really, with the statute, are we made to, in a sense, diagram this, grammatical parts in order to discern, you know, what equipment means? In other words, it's not like when we get an ambiguous word, a word that has no meaning, you know, we do all of that, but if it's straight on, says equipment, I'm just, what's the most empirical basis for so limiting what equipment means, even though, mentally, we can say, well, surely equipment must mean something on land, but the words don't say that, right? I mean, what am I missing? And so, what I would say is, not so much diagramming the sentences or even the grammar, but the idea that we have three components of intent. We have a group of items, machinery, implements, attachments, and equipment, which, generally speaking, are things we think of like a farmer using a tractor with an attached plow to plow the field in connection with ultimately harvesting it. So, we have a group of items that bring to mind functional tools that are achieving a commercial end. We have, on the tail end of it, the list of statutory applications, purposes, and activities, all of which are commercial items, harvesting, raising livestock, construction, mining, none of which are safety items. They are commercial endeavors, and then in the middle of that, we are saying that this is equipment that has to be used in connection with these commercial activities, and the contrast with marine life rafts is that they're an end in themselves. They're not trying to accomplish some separate commercial purpose. They are not being used to mine or assist with mining. They are not being used to harvest or assist with harvesting. They are not being used to construct or assist with constructing. They are being used for a separate and important purpose, but not a purpose that's at all listed in the statute, and that was one of the points that the State of Texas amicus brief mentions, that we're talking about a safety and survival purpose, which is not at all connected to any of the statutory listed purposes. These life rafts, they're really sort of like the lifeboats on the Titanic. Before it was known to be sinkable, they didn't have much to do with anything until it did sink. Yes, that's exactly right. We've characterized them as passive. They are encapsulated. The hope is that they are never used for anything, and when they are used, it's the antithesis of commercial operations. In fact, The import of my question is just the opposite, that when you have something that operates in areas of danger, known danger, like maritime endeavors, it seems to me that life rafts or lifeboats are essential equipment to even venture into that area, so why is this so important for that endeavor? For that, I would say that they are critical for the location, but not because of what the location is commercially involved in. It's because it happens to be a structure or vessel where people are, where water is. Let me say this. I have the greatest respect for Judge Rosenthal and her body of work. It seems to me that her rationale, although maybe impeccable down to the last step in her rationale, that at the last step, all she does is say, well, it just isn't equipment. Life rafts just aren't equipment. That's not a very strong argument, it doesn't seem to  And I think, correct, that by itself is not, that way of stating it is not persuasive. What is persuasive is the idea that there has to be a functional connection to a listed statutory purpose or else if you don't draw the line somewhere, you have a real line drawing problem, where you're not going to know what is That's what we do every day. We draw lines where they haven't been drawn before sometimes. Yes, and so I would propose that a very textually based line to draw here is that the functional connection that is implied by the word used, are these items used in connection with the these activities? They may be legally required to be in the vicinity of people conducting those activities, but they are not used to obtain the outcome of any of the listed activities. Well, don't we have cases and statutes that say that you can't conduct certain operations in a maritime field without safety equipment like lifeboats or life rafts? Yes, and so under the federal regulations to have an offshore drilling platform, it would have to have certain safety equipment in order to be legally authorized to And doesn't that make those things essential? And if they're essential, why aren't they essential to the structure? They are, and they are legally required, but in their capacity as passive safety devices, they are not being used or employed to perform any of the commercial work, and their function is entirely independent of whatever commercial work is being performed. Other tools and equipment as defined under the Act would have special purposes to be directly related to the commercial job that they are performing. Life rafts are the same wherever they are located because their purpose is independent of whatever is going on commercially. And to say that they are legally required and therefore that satisfies the in connection with standard as with the Gulf Copper case where the Texas Supreme Court looked at the compliance as one of several things, including contractual requirements, including operational requirements, as satisfying a connection with standard, I think that is FPS's best case on the issue, but it's a good case for us in the sense that there is a statutory textual distinction, the idea that use requires a functional connection, and in the Gulf Copper case, there was no use. There was only a statement of services being in connection with work, and so when in connection with is in an isolated fashion without saying used, the fact that it could be a contractual connection, a regulatory connection, an operational connection makes sense. In this situation, we have the word used, and that implies a functional connection with the listed statutory purpose. The analogy or example that I would give is suppose someone in Ohio who manufactures two-way radios, sells them to somebody in Texas, a dealer, and it's a job that generally sells the radios to police stations, and I thought of this because my wife's family had a business like this. But those two-way radios are also a type of required equipment on vessels, because as we've listed in our brief on page 43, there are lots of things that are legally required on vessels, from communication devices, navigation, safety. Would a person who's making those radios, selling them to a place, intending to deal with police stations, realize that their agreements are governed by the act because those items are legally required on vessels also? It's changing, the use that the customer is putting the item to in that situation is governing what is covered by the act because of these legal requirements, as opposed to just looking at the functional requirements. Anyone could tell looking at the statute that a tractor is going to be covered, or a bulldozer is going to be covered. But to look at the statute and think that, oh, marine life rafts are covered here, they're just not the type of machinery, implements, or attachments that you would expect to be regulated alongside farm tractors, construction bulldozers, industrial forklifts, irrigation systems. They're qualitatively different. We've mentioned that due to that, a person in the position of trying to understand whether my two-way radios would be covered faces a notice concern, a fair warning concern. If there is a concern that manufacturers of items like marine life rafts or two-way radios would have no way of realizing that they might be swept into this act, that is a statutory construction principle to say we want to avoid the due process fair warning question if there is a reasonable interpretation that doesn't draw the line there. And here, by imposing the operational functional requirement, you completely avoid that problem. Now, related to the in connection with is another aspect of the legislative intent, which you can see by looking at the history of the act, which started back in the 90s as one that was defined specifically in terms of equipment. And so it said it applied to agreements involving farm tractors, farm implements, utility tractors, industrial tractors, forklifts, material handling equipment, forestry, harving equipment, off-road construction equipment, outdoor power equipment, all of these things that are very terrestrial in nature. And then in 2011, when it was rewritten, it was written in terms of activities and purposes as opposed to listed out equipment. But the title of it still had a terrestrial focus, agriculture, construction, industrial mining, forestry, landscaping, outdoor power equipment, dealer agreements. And the main point here is that throughout the definition, there is absolutely no mention of any kind of typical maritime activity. There's no mention of shipping, which is the backbone of global commerce, as FPS has pointed out. There's no mention of fishing, no mention of offshore operations, no mention of dredging, towing, tugboats. There's just no mention of maritime commerce. At the same time, there are limited statutory exclusions for certain vehicles, passenger vehicles, trailers, ATV, off-road vehicles. In that context, where you have a statute that has no mention of anything obviously maritime, a history of very terrestrial, earthbound items, and these limited exclusions that also just pertain to limited commercial vehicles that have both commercial and non-commercial earthbound purposes, the Nocitor Associus canon would have you look at these activities and say, well, I'm not going to interpret these to reach out into the maritime world because it just doesn't fit 80% or 90% of the statute. And that aligns with the Texas, the state of Texas argument on the Boat Act, which is, at the same time, in 2011, the legislature passed an act that regulates vessels, specifically vessels that are motorboats or large sailboats, and it imposes dealer agreement restrictions on them. But it excluded non-motorized life rafts, which are the ones at issue here. There are such things as motorized life rafts, but the non-motorized ones are excluded. And as the state of Texas put it, by the legislature regulating a maritime situation with vessels here and excluding life rafts, we shouldn't be putting them back in a different act. But that's the terrestrial argument that even Judge Rosenthal rejected, didn't she? Yes, yes, she did. And you don't have to accept the complete terrestrial argument to say that, well, because of the Boat Act, it shouldn't add back in life rafts that the legislature has excluded through their specific regulation of watercraft in general. That is the argument. And the other aspect of the argument is that the Boat Act, by regulating boats, further shows, at least with respect to watercraft, that that is not what the legislature was purporting to regulate in the Dealer Act, because you'd be imposing conflicting requirements on motorboats. Sir, I see my time is up, and thank you for the opportunity. All right, thank you. We appreciate it. This case has had many lives. We're the second panel that's been to the Texas Supreme Court for a certified question. We asked at the beginning of this one, do we need to go back to the Texas Supreme Court? Y'all say no, and so here we are. So, Mr. Jefferson, you get the final words. It is many lives, and this is my third argument on this very case. But I would, Judge Dennis, I want to amplify what you said. On page 14 of our brief of appellant, in footnote 5, we have all, several contexts in which legislation requires life rafts in maritime operations like Titanic, offshore drilling, cruise ships. They're all listed, and there's also an international treaty that the United States has signed off on that requires them. So this is equipment that is necessary and critical for this type of activity. The question about breadth, counsel says, well, this is too broad in connection with, under our reading would be too broad. This is a matter that the legislature gets to decide. The legislature can look and see whether this is appropriate policy for the state of Texas. And if it's too broad, you hire a lobbyist and you go to the legislature and you try to get exemptions. And we know that that has happened because, for example, in the Dealer Act itself, there are exemptions for, the legislation says equipment does not mean, in paragraph B, equipment does not mean trailers or self-propelled vehicles designed for the transportation of persons or property or off-highway vehicles like ATVs. There could have been a third category if their view had prevailed, and that would be life rafts or safety equipment. But that is not in the legislation. It's not in an explicit reading of the legislation. And then I would like to end with this idea of passivity, that if the equipment is passive, then it cannot be equipment under the Dealer Protection Act. But think about it. I mentioned the hard hats at the beginning, but think of all of the ways in which passive equipment furthers commercial and industrial activity. Passive safety devices are made for commercial contacts in the mining space, for example. There are air quality monitors. Maybe they won't be needed, but they are essential for the protection of the crew. Self-contained rescue air packs in mining operations. You have refuge chambers that are essentially like an underground life raft to protect miners during an emergency. Nothing in this Act excludes devices like this, which are used in connection with mining from the Act's definition. And finally, I would say Judge Rosenthal did agree that these sorts of equipment are routine in the maritime space. Counsel says they didn't concede anything about it. I just want to read from their brief on this point. In their brief, Cervatex stated that, quote, it does not dispute, this is at page 64 and 65 of their brief of appellees, does not dispute Judge Rosenthal's finding that life rafts are routine, required in a variety of maritime industries. And as a result, Cervatex says on those same pages, this Court may not need to decide the issue because if the Court agrees that the Act does generally reach maritime industries and FPS is right about the definition of in connection with, it would not seem to matter whether mining includes offshore drilling or not, since vessels engaged in commercial activities noted by the District Court often have life rafts. I'm just reading from their brief and I think it advances our argument that life rafts are equipment and that in this one particular area, the District Court erred in dismissing this case. And so we would ask that the Court reverse that dismissal and remand this case for trial to the District Court. Would you object to our certifying the question? The only reason we objected, Your Honor, well, really there are two main reasons. Number one, we think Texas law is clear and the Gulf Copper case answers it for us that if you have regulated requirements for life rafts, that is enough to be in connection with, so the Court can simply apply it. That's number one. The second reason we objected is more prudential. Our company is a small company. If it's certified to the Court, that's another round of briefing, you know, brief our side, reply . . . . . . former head on and having served on the Texas Supreme Court, we find it a little bit odd that the Fifth Circuit is sending a second certified question in connection with the same statute in this same case. I mean, maybe that's an out-of-school question, but, I mean, you're the Chief Justice there, so, I mean, wouldn't it be a little different, I'll just say? It would be unusual, but I would also say the Court . . . if the Court were to certify it, the Supreme Court would accept it on the day that you certify it, or the day after. I mean, that's . . . That's a prudential response. Thank you, Your Honor. I'm going to glean what your real answer would be. Anyway, we appreciate it. It's an interesting case, to put it mildly. We've got more maritime this week than we know what to do with, don't we? We had one yesterday, we've got one coming up, and we've got life rafts here, so we'll be experts. All right, thank you, Counselor. The case will be submitted along with the others.